UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

Western Division

| | |
|---|---|
| DAVID MASON,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>RHODES COLLEGE,<br><br>　　　　Defendant. | Case No.: _____<br><br>**COMPLAINT FOR DISABILITY DISCRIMINATION AND RETALIATION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DAVID MASON ("Plaintiff" or "Mr. Mason") files this Complaint, and complains of the named Defendant RHODES COLLEGE ("RHODES" or "Defendant"), and for claims, alleges as follows. In this action, Plaintiff complains of the named Defendant for utilizing Plaintiff's disability as a determining factor in the evaluation of Plaintiff's job performance and his opportunity for promotion as a tenured professor at Rhodes.

## JURISDICTION AND PARTIES

1. This is an action for damages and injunctive relief pursuant to Title I of the American's with Disabilities Act ADA and Section 504 of the Rehabilitation Act. This Court is vested with original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 et seq.

2. This Court has personal jurisdiction over each the unlawful conduct alleged herein occurred within this judicial district.

3. Plaintiff has been damaged in excess of the jurisdictional amount of this Court.

4. Plaintiff is a tenured professor at Defendant Rhodes college, who has Autism Spectrum Disorder ("ASD").

5. Defendant is a private institution of higher learning and the employer of Plaintiff.

## VENUE

6. Venue is properly in this Court pursuant to 28 U.S.C. §1391, in that all parties reside in this Judicial District and the matters at issue arose in this Judicial District.

7. This action also arises under the following federal statutes: The Americans with Disabilities Act of 1990 (ADA), Pub.L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101 et seq., amended by the Americans with Disabilities Amendments Act. (ADA-AA) with an effective date of January 1, 2009, which, at Title I of the ADA, prohibits discrimination in the provision of public services. Section 202 of the Act, 42 U.S.C. §12132 (Supp.1991), the Rehabilitation Act of 1973, §§504 and 505, as amended, 29 U.S.C.A. §§794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under §504 to conform to the definition of "disability" under ADA-AA. Both the ADA and §504 prohibit retaliation against persons with disabilities.

8. Plaintiff duly filed a charge of disability discrimination with the Equal Employment Opportunity Commission, and received a right-to-sue; thereby exhausting his administrative remedies. This action is filed within the time period prescribed by that right-to-sue notice.

## FACTS COMMON TO ALL CLAIMS

9. Mr. Mason obtained tenure at Defendant in February of 2010. In August of 2013, Mr. Mason received appointment as Department Chair for a three-year term, and in August of 2016 was re-appointed as chair for another three year term.

10. On January 20, 2017, Mr. Mason was denied promotion. This denial of promotion was purportedly based upon a single letter submitted by an unknown person, and the contents of which the Office of Academic Affairs has refused to disclose to Mr. Mason.

*Removal as Department Chair*

11. The following year, in March of 2018, prior to the expiration of his three-year term as chair, Rhodes' Office of Academic Affairs removed Mr. Mason as department chair—offering no rationale for the decision—while further replacing Mr. Mason as Director of Asian Studies without consulting or even notifying Mr. Mason. Rhodes provided Mr. Mason with no notice, no process or procedure, or any reasonable academic or business justification for these adverse actions.

*Failure to Perform Mid-Period Update*

12. In the 2019-2020 academic year, the Office of Academic Affairs failed to conduct a

mandatory "mid-period update" as required by Rhodes policy.  Despite Mr. Mason's inquiries, the Office of Academic Affairs provided no notice, no process or procedure, or any reasonable academic or business justification for this failure to follow policy.

13. The "mid-period update," which is a mandated part of the six-year process of Post Tenure Reviews, never occurred in Mr. Mason's case.  The Office of Academic Affairs failed to conduct Mr. Mason's "mid-period update" in the 2019-20 academic year, and to date, no explanation or rationale for this failure has been provided.

*Blacklisting for Promotion*

14. In January of 2020, the Office of Academic Affairs acknowledged blacklisting Mr. Mason from leadership positions at Rhodes, providing no factual basis or policy permitting such blacklisting.

*Department-Wide Psychological Evaluation*

15. In the fall of 2020, without consulting faculty governance, Provost Bassard commissioned an unprecedented psychological evaluation of all Theatre Department faculty.  The Office of Academic Affairs has not provided the results of this evaluation, nor provided a rationale for engaging in a department-wide evaluation of this nature.

*Request for Delay of Post Tenure Review*

16. In 2022 Mr. Mason took a research leave from the college.  As part of that leave, Mr. Mason requested a delay in his Post-Tenure review process, as has been granted other similarly-situated tenured faculty, who are non-disabled.  In August of 2022, the Office of Academic Affairs rejected Mr. Mason's request for a delay.

17. On October 18, 2022, Mr. Mason requested a Post-Tenure review delay from three faculty committees, and further requested the appointment of an "acting chair" for his review.

18. Notably, one committee member confirmed in response to this request that the Office of Academic Affairs has recommended review delays for other faculty.  Committee members eventually confirmed to Mr. Mason that Post-Tenure review delays have previously been given in the case of conflicting sabbatical leaves.

*Appointment of "Acting Chair"*

19. In January of 2023, the Office of Academic Affairs informed Mr. Mason of the appointment of an "acting chair" for Mr. Mason's Post Tenure review; however, there appears to be no evidence that any members of the faculty committee were involved in this appointment.

20. On July 11, 2023, Mr. Mason lodged an objection to the individual appointed as "acting chair," on the grounds of a clear conflict of interest. This objection was rejected by one of the faculty committees, without elaboration.

*Post-Tenure Review*

21. On August 15, 2023, Rhodes issued its Post-Tenure Review of Mr. Mason's career from Fall, 2016 through Fall, 2022, declaring Mr. Mason "deficient" with respect to "Service to the College," based on at least six demonstrably false allegations and several unsubstantiated claims.

*Appeal of Post-Tenure Review*

22. On August 15, 2023, Mr. Mason timely filed an appeal of his Post-Tenure Review.

23. On January 24, 2024, the Provost notified Mr. Mason that his appeal is closed, including in the notification a copy of the faculty committee's statement that the matter is not concluded.

24. The Provost has asserted that the "mid-period update" which the Office of Academic Affairs had failed to perform from was not necessary, and further the Provost denied Mr. Mason's request to record meetings. During this time, Mr. Mason disclosed to the Provost his Autism Spectrum Disorder ("ASD") condition.

25. In April of 2024, the Faculty Professional Interest Committee agreed to examine the demonstrably false allegations in Mr. Mason's Post Tenure review and to discuss how faculty, in general, can add to and amend their individual personnel files. To this date, Mr. Mason has received no report or findings from this committee.

26. On April 29, 2024 the Provost acknowledged the falsity of at least one of the negative allegations in Mr. Mason's Post Tenure Review; however, the Provost insisted that the existence of that falsity "will not change the outcome" of the review. Furthermore, the Provost declared Mr. Mason "ineligible" for a faculty-conducted Promotion Review.

27. On May 1, 2024, the Provost informed Mr. Mason that the outcome of his Post Tenure review would remain the same, no matter how many of the negative allegations were proven to be false. In referencing a "generous offer" to Mr. Mason, the Provost implied that he could choose further adverse action against Mr. Mason. In this context, responding to Mr. Mason's protected activities, a reasonable inference could be drawn that the Provost was threatening retaliation for Mr. Mason's protected activities.

*Internal Complaint*

28. The following day, on May 2, 2024, Mr. Mason submitted an internal "Bias Report", pursuant to college policy.

29. On May 15, 2024, the Provost affirmed that the "deficient" outcome of Mr. Mason's Post Tenure Review is directly related to false statements and the "disputed" allegations in the Post Tenure Review, while admitting that the Office of Academic Affairs failed to perform the mandatory "mid-period update" for Mr. Mason.

30. On May 15 and June 14, 2024, the college's Title IX coordinator, Inez Warner, met with Mr. Mason concerning his report of unlawful bias. Ms. Warner indicated that she had communicated with the Office of Academic Affairs concerning Mr. Mason's claims, who purportedly informed her that the office had "answered all of the questions." This non-response, and in particular a non-response to Mr. Mason's complaint of unlawful bias, thwarted the purpose of the college's internal process, abandoned any interactive process, and negates any avoidable consequences defense.

*EEOC Charge*

31. Given the Office of Academic Affairs failure to even respond to Mr. Mason's claims, and with nowhere else to turn to remedy the unlawful practices, Mr. Mason submitted an online inquiry to the Equal Employment Opportunity Commission ("EEOC") on June 22, 2024. Mr. Mason was interviewed by the EEOC on July 16, 2024, and submitted a charge on July 17, 2024. The EEOC issued a closure/right to sue on August 20, 2024.

*Internal Petition Regarding Provost Ability to Declare Ineligibility for Promotion Review*

32. On August 27, 2024, Mr. Mason petitioned four faculty committees to determine whether the college's handbook empowers the Provost to declare a member of the faculty "ineligible" for faculty-conducted Promotion Review.

33. In its August 30, 2024 agenda, the college's Diversity and Equity Committee included Mr. Mason's "ineligibility" petition. On October 10, 2024, the Faculty Governance Committee declined to consider this "ineligibility" matter, without providing a reason. In a scheduled meeting on October 11, 2024, the Diversity & Equity Committee's chair recommended that this committee not consider the "ineligibility" matter.

## CLAIM ONE

## DISABILITY DISCRIMINATION UNDER THE ADA

34. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

35. Because ASD substantially limits at least one of Plaintiff's major life activities Plaintiff is an individual with a disability under the ADA.

36. At all times relevant, Plaintiff was diagnosed with Autism Spectrum Disorder.

37. Plaintiff was otherwise qualified to perform all tasks expected of a tenured professor and department chair.

38. Plaintiff was subjected to discrimination because of his disability.

39. At all times relevant, Plaintiff was "regarded as" suffering from a disability by Defendant's management.

40. Defendant acted with discriminatory intent because the actors knew of Plaintiff's ASD when they blacklisted Plaintiff from promotion, removed Plaintiff as department chair, reviewed Plaintiff negatively, and refused Plaintiff's appeal.

41. As a direct result of the acts and conduct of Defendant as alleged herein, Plaintiff was unlawfully denied promotional opportunities and career advancement, entitling him to lost pay, benefits, career progression, and diminished earning capacity in an amount to be proven at trial.

42. As a direct and proximate result of the willful, knowing, discrimination, Plaintiff has suffered mental distress, anguish, and indignation. He is thereby entitled to general and compensatory damages in an amount to be proven at trial.

43. The conduct of Defendant described hereinabove was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

44. Defendants committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover nominal, actual, and compensatory damages an attorneys' fees in amounts according to proof at time of trial, in addition to any other remedies and damages allowable by law.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

## CLAIM TWO

## VIOLATION OF THE REHABILITATION ACT

45. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

46. Because ASD substantially limits at least one of Plaintiff's major life activities Plaintiff is an individual with a disability under the Rehabilitation Act.

47. Plaintiff was fully qualified to be a tenured professor and department head and was able to perform all the essential functions of the position.

48. Indeed, Defendant had approved Plaintiff for these roles in the past.

49. As an institution of higher learning, Defendant receives Federal financial assistance, to which Section 504 of the Rehabilitation Act applies.

50. As a direct result of the acts and conduct of Defendant as alleged herein, Plaintiff was unlawfully denied promotional opportunities and career advancement, entitling him to lost pay, benefits, career progression, and diminished earning capacity in an amount to be proven at trial.

51. As a direct and proximate result of the willful, knowing, discrimination, Plaintiff has suffered mental distress, anguish, and indignation. He is thereby entitled to general and compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

### CLAIM THREE

### FAILURE TO ACCOMMODATE/ENGAGE IN THE INTERACTIVE PROCESS

52. At no time has Defendant made an individualized assessment of whether Plaintiff can perform the essential functions of the job (with or without a reasonable accommodation).

53. As a direct result of the acts and conduct of Defendant as alleged herein, Plaintiff was unlawfully denied promotional opportunities and career advancement, entitling him to lost pay, benefits, career progression, and diminished earning capacity in an amount to be proven at trial.

54. As a direct and proximate result of the willful, knowing, discrimination, Plaintiff has suffered mental distress, anguish, and indignation. He is thereby entitled to general and compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

### CLAIM FOUR

### RETALIATION

55. Both the ADA and the Rehabilitation Act prohibit retaliation against individuals who engage in protected activity, such as making claims of unlawful bias against persons with disabilities.

56. Plaintiff engaged in protected activities set forth above in good faith by filing an internal bias complaint and an EEOC complaint, in addition to informal complaints of unfair treatment.

57. In close temporal proximity to Plaintiff's protected activities, Defendant has continued to refuse to permit Plaintiff to promote or to correct admittedly false statements in the tenure review process.

58. As a direct result of the acts and conduct of Defendant as alleged herein, Plaintiff was unlawfully denied promotional opportunities and career advancement, entitling him to lost pay, benefits, career progression, and diminished earning capacity in an amount to be proven at trial.

59. As a direct and proximate result of the willful, knowing, discrimination, Plaintiff has suffered mental distress, anguish, and indignation. He is thereby entitled to general and compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendants and award the following relief:

a. Declaratory relief, including but not limited to a declaration that Defendant Rhodes College discriminates against individuals with ASD in violation of the Rehabilitation Act;

b. Declaratory relief, including but not limited to a declaration that the Rehabilitation Act and the Americans with Disabilities Act bar Rhodes from denying employment, promotion, or tenure to individuals with ASD without an individualized assessment of whether they can perform the essential functions of the job (with or without a reasonable accommodation);

c. Appropriate injunctive relief, including but not limited to reinstatement of Plaintiff's position and an order restraining Defendant from engaging in further discriminatory conduct of the types alleged in this Complaint;

d. Back pay in an amount to be determined at trial;

e. In the event reinstatement is not granted, front pay;

f. Compensatory and consequential damages, including for emotional distress;

g. Punitive and exemplary damages to deter future unlawful conduct;

h. Pre-judgment and post-judgment interest at the highest lawful rate;

i. Attorneys' fees and costs of this action; and

j. Any such further relief as the Court deems appropriate.

Respectfully submitted: October 22, 2024          FORTHRIGHT LAW, P.C.


      /s/  Dow W. Patten
Dow W. Patten  *
FORTHRIGHT LAW, P. C.
50 California St., Suite 1500
San Francisco, CA 94111
v – 415-228-6848
f - 415-228-6876
dow@forthrightlaw.com

**ATTORNEYS FOR PLAINTIFF**


## JURY DEMAND

Plaintiff hereby demands trial by jury of all matters so triable.


Respectfully submitted: October 22, 2024          FORTHRIGHT LAW, P.C.


      /s/  Dow W. Patten
Dow W. Patten  *
FORTHRIGHT LAW, P. C.
50 California St., Suite 1500
San Francisco, CA 94111
v – 415-228-6848
f – 415-228-6876
dow@forthrightlaw.com

**ATTORNEYS FOR PLAINTIFF**


**\*** Pro Hac Vice Motion Pending Issuance of Certificate of Good Standing